UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAISHAWN ROWAN,<br><br>      Plaintiff,<br><br>  v.<br><br>OFFICER CARROLL, STAR #11252,<br>OFFICER CAPOUCH, STAR #4523,<br>OFFICER CROSS, STAR #18062,<br>OFFICER KOZLOWSKI, STAR #12957, and<br>CITY OF CHICAGO,<br><br>      Defendants. | No. 23 CV 7033<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daishawn Rowan was pulled over by Chicago Police Officers Kozlowski and Capouch for allegedly failing to stop at a stop sign. Rowan told the officers that he had a gun in a bag in the backseat and that he had a FOID card; the officers, along with Officers Carroll and Cross, took Rowan into custody and Rowan was charged with aggravated unlawful use of a weapon. After a trial, Rowan was acquitted and brought this suit asserting claims against the officers and the City of Chicago for violations of the Fourth Amendment, malicious prosecution, a *Monell* liability claim against the City, and state law torts. Defendants move to dismiss, [18] and [24], and those motions are granted in part and denied in part.

**I.    Legal Standards**

A complaint must contain factual allegations that state the required elements of the plaintiff's claim in a way that "raise[s] a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court then considers

the allegations and determines whether the plaintiff's claim is plausible, which requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## II. Background

Plaintiff Daishawn Rowan was arrested for Aggravated Unlawful Use of a Weapon; Officers Kozlowski, Capouch, Carroll, and Cross were involved in the arrest. [1] ¶ 10.[1] Rowan was pulled over for allegedly failing to stop at a stop sign. [1] ¶ 11. As Officer Kozlowski approached, Rowan rolled down the windows and placed his hands outside the car. [1] ¶ 17; [22] (Kozlowski BWC 21:26:05–15). Rowan explained that he had been moving around because his dog was in the back seat and he was trying to calm the dog down. [1] ¶ 18. The officers ordered Rowan out of the car, and he complied while telling the officers that he had a firearm in the car, that it was in a bag, the clip was in the glovebox, and he had a valid FOID card. [1] ¶¶ 19–20. After Rowan was out of the car, the officers allegedly noticed that Rowan's license plates were expired. [1] ¶ 12.

The officers placed Rowan's hands behind his back and handcuffed him. [1] ¶ 21. The officers searched Rowan's car and found an unloaded firearm in a "Glock

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing. The court takes all well-pleaded factual allegations in the complaint as true and draws reasonable inferences in the plaintiff's favor. *Bronson v. Ann & Robert H. Lurie Child. Hosp.*, 69 F.4th 437, 448 (7th Cir. 2023). Parties have agreed that I should review the footage from the body-worn cameras of the defendant officers. *See* [18] at 3–4 *and* [29] at 3. Because the parties agree, I consider the footage but draw all reasonable inferences from the footage in favor of the plaintiff and do not resolve any issues of fact that might arise from the footage.

2

Box," which itself was inside of a bag in Rowan's backseat. [1] ¶ 23. The officers told Rowan he was under arrest and eventually told him he was under arrest for Aggravated Unlawful Use of a Weapon. [1] ¶¶ 26–27. Rowan was charged with that crime and was acquitted of the charge after trial on July 7, 2023. [1] ¶¶ 30–31.

At some point in time, the officers claimed they saw Rowan "moving aggressively within the cabin of the vehicle." [1] ¶ 13. The officers also claimed to have seen Rowan lean over to the front passenger side of the vehicle and place a "black object" or "handgun" behind the passenger seat. [1] ¶ 14.

### III. Analysis

#### A. Section 1983 Fourth Amendment Unlawful Search and Seizure

"To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023). Warrantless seizures or searches are *per se* unreasonable unless they fall within an exception, including when law enforcement had probable cause of criminal activity, or made a search incident to arrest. *See United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000); *Neita v. City of Chicago*, 830 F.3d 494, 497–98 (7th Cir. 2016) (discussing probable cause exception to warrant requirement for arrest and search incident to arrest).

When "the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing, or is about to commit an offense," than the officer has probable cause to seize the individual. *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (cleaned up). What facts and circumstances were known to the officers

3

to support a finding of probable cause is generally a question for the jury. *See Abbott v. Sangamon Cnt.*, 705 F.3d 706, 714 (7th Cir. 2013). But, because probable cause is an absolute defense to an unlawful seizure claim, a plaintiff has the burden to plead a lack of probable cause in his complaint. *See Andersen v. Village of Glenview*, 821 Fed. App'x 625, 627 (7th Cir. 2020) (citing *Neita*, 830 F.3d at 497).[2]

1. *Probable Cause for the Stop*

Rowan's complaint states that he was "pulled over for allegedly failing to stop at a stop sign at 10058 S. Yates Ave." [1] ¶ 11. The defendant officers argue that they had probable cause to stop Rowan for failure to stop at a stop sign, and that his complaint admits as much. *See* [18] at 12. But alleging that he was pulled over for "*allegedly* failing to stop at a stop sign" is not an admission that he failed to stop at the stop sign. And the body-worn camera footage does not establish that Rowan failed to stop at the stop sign; because of the angle of the cameras while the officers are sitting down, it's impossible to see the street in front of them before they pull Rowan over. [22] (Kozlowski BWC at 21:23:45–25:45); (Capouch BWC at 21:23:44–25:45). Furthermore, to the extent Rowan admits that his license plates were expired during the stop, there is no indication from the complaint or video footage that Kozlowski or Capouch knew that at the time they pulled Rowan over. *See* [1] ¶ 12; [22] (Kozlowski

---

[2] Qualified immunity shields officers from liability if "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022) (explaining "arguable probable cause").

4

BWC at 21:23:45–25:50); (Capouch BWC at 21:23:44–25:45).[3] Rowan's complaint does not establish that the officers had probable cause to pull him over, and it is a reasonable inference from Rowan's use of the word "allegedly" that he made the required stop and therefore pleads that the officers pulled him over without probable cause that he had committed a traffic violation.

The officers cannot base their probable cause on the assertions that they observed Rowan moving aggressively and placing a handgun behind the passenger seat. Kozlowski and Capouch allegedly observed those actions *after* they pulled Rowan over, so they could not inform the officers' decision to stop Rowan.[4]

### 2. Probable Cause for the Arrest

As with the stop of the vehicle, the question is whether Rowan's allegations, taken as true, show that the officers had probable cause to arrest Rowan. "[A]n arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue." *Abbott*, 705 F.3d at 715.[5]

---

[3] It appears as though Officer Capouch enters something into the computer at approximately 21:24:34, but the computer screen is not clearly depicted, so an observer cannot read the information submitted or the information returned. [22] (Kozlowski BWC at 21:24:34–54). There is no audio from the camera at that point in time.

[4] Rowan's response briefs clarify that his allegations that defendants "claim" to have seen Rowan moving aggressively within the cabin of the vehicle or place a black object or handgun behind the passenger seat is an allegation that the officers made false statements about what they saw. *See* [29] at 9–10. That is a reasonable inference from the use of the word "claim," although Rowan could have been more specific in his complaint to assert the absence of probable cause.

[5] Because the complaint does not establish probable cause for the officers' stop of Rowan's vehicle due to a traffic violation, the alleged traffic violation cannot serve as the basis for Rowan's arrest. *Cf. Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

The defendant officers argue that they had probable cause to arrest Rowan without a warrant because, after they stopped him, "they believed they saw him moving aggressively about the cabin of the vehicle with a gun in his hand." [18] at 10. The complaint does not allege that Rowan was doing that; the exact language is that the defendants "claim to have seen" Rowan moving about aggressively and place something, maybe a gun, behind the passenger seat. *See* [1] ¶¶ 13–14. An allegation that someone claimed to have seen something is not an allegation that they saw it.

Secondly, nothing on the body-worn camera footage establishes that the officers saw Rowan moving around after they stopped him or that they saw anything in his hand. The cameras are pointed at the dashboard and the sky until the officers exit their car. [22] (Kozlowski BWC at 21:23:45–25:55); (Capouch BWC at 21:23:44–51). The footage does not show Rowan's car until Kozlowski and Capouch exit their car, and as they approach Rowan's car, the video does not show Rowan moving about aggressively in the car or putting something in the back seat. [22] (Kozlowski BWC at 21:25:58–21:26:03); (Capouch BWC at 21:25:55–26:06). The officers argue that their conversation with each other (unintelligible or inaudible on the recording made available to the court) and with Rowan about him moving around in the car establishes that they saw him do so. [18] at 10. Those kinds of findings depend on the officers' credibility and require a trial. The footage does not establish that the officers saw Rowan with a gun or a black object in his hand.

Finally, the officers argue that Rowan's admission that he had a gun in the car is probable cause that he committed the crime of aggravated unlawful use of a

6

weapon. [18] at 10–11.[6] Possession of a firearm is not a crime; something else about either Rowan or the way he was carrying the gun is necessary to fall under the aggravated unlawful use of a weapon statute cited by the officers. *See* 720 ILCS 5/24-1.6(a)(1), (2), (3); *see* [18] at 10–11. As relevant here, without suspicion to believe Rowan was handling the gun while in his car, the officers needed to reasonably believe that Rowan possessed an uncased, loaded, and immediately accessible firearm (or an uncased, unloaded gun with immediately accessible ammunition). *See* 720 ILCS 5/24-1.6(a)(3)(A), (A-5), (B), (B-5). Or, they needed a reasonable belief that Rowan had not been issued a currently valid FOID card. 720 ILCS 5/24-1/6(a)(3)(C).

Rowan's complaint alleges that he told the Kozlowski and Capouch that he had a gun, that it was in his bag, that the magazine holding the ammunition was in the glovebox, and that he had a valid FOID card; the complaint also alleges that the gun was unloaded and was retrieved from a "Glock Box" carrying case inside of a bag in the rear of the vehicle. [1] ¶¶ 20, 23. The footage from the officers' body-worn cameras does not contradict these allegations; it does not show that the gun was found somewhere other than in a Glock Box in a bag, or that the magazine was found with the gun (or that the gun was loaded). (Kozlowski BWC at 21:26:19–53, 27:42–53, 28:08–50, 29:03–29:40, 32:10–37); (Capouch BWC at 21:26:20–53, 27:35–51, 32:07–

---

[6] At the point in time that Rowan told the officers that he had a gun, the officers had already ordered him out of the car, and he was complying. *See* [1] ¶¶ 19–20; [22] (Kozlowski BWC at 21:26:18–31); (Capouch BWC at 21:26:14–30). Ordering Rowan out of the car is a seizure under the Fourth Amendment; such a seizure is reasonable if the officers lawfully detained the vehicle for a traffic violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). Neither the complaint nor the BWC footage establishes that the officers had probable cause that Rowan had committed a traffic violation at that point in time.

7

32:32).[7] Finally, on the BWC footage Rowan tells Kozlowski and Capouch that he has a FOID card, Kozlowski then confirms if it's "good and everything" and Rowan says, "yes, sir." [22] (Kozlowski BWC at 21:26:34–54); (Capouch BWC at 21:26:47–50). Neither the allegations in Rowan's complaint nor the BWC footage establish as a matter of law that the officers had probable cause that Rowan was committing the offense of aggravated unlawful use of a weapon.

### 3. Search of Rowan's Vehicle

"Warrantless searches are *per se* unreasonable under the Fourth Amendment, subject to only certain exceptions." *United States v. Ostrum*, 99 F.4th 999, 1005 (7th Cir. 2024). The two exceptions at issue here are the automobile exception and the search incident to arrest exception. Under the automobile exception, a law enforcement officer may conduct a warrantless search of a vehicle, regardless of whether an occupant has been arrested, "so long as there is probable cause to believe it contains contraband or evidence of illegal activity." *Ostrum*, 99 F.4th at 1005–06; *United States v. Johnson*, 93 F.4th 383, 388 (7th Cir. 2024). Police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Arizona v. Gant*, 556 U.S. 332, 343 (2009).

---

[7] In the BWC footage, Rowan says the "clip" is in the armrest. [22] (Kozlowski BWC at 21:26:30–33). Whether the magazine was in the armrest or the glovebox, the complaint alleges, and the footage supports, that the ammunition was separate from the gun and the gun was unloaded, which is the relevant issue under 720 ILCS 5/24-1.6(a).

Much of the officers' brief is focused on the argument that they believed the car had evidence that Rowan had an unsecured gun in the car, such that they could search the car under the automobile exception. *See* [18] at 13. But that argument relies on the assumption that either the complaint admits or the BWC footage establishes that the officers saw Rowan moving around in the car with a gun or black object in his hand, and neither source admits nor establishes such a fact. At this stage in the case, there is no other evidence indicating that the officers knew or had reason to suspect that Rowan had a gun in the car. *Cf. United States v. Payne*, 654 Fed. App'x 844, 845–46, 848 (7th Cir. 2004) (police had probable cause to search defendant's car because they had intercepted phone calls between defendant and brother discussing carrying guns *and* defendant reached toward the back of the car, then left the car and ran, and threw the keys away while running). There is nothing else in the record that establishes probable cause to believe that Rowan had some other contraband or evidence of some other crime in his vehicle.

Searches of vehicles incident to a recent occupant's arrest are reasonable "only when the arrestee is unsecured and within reaching distance of passenger compartment at the time of the search." *Gant*, 556 U.S. at 343. Neither the complaint nor the BWC footage establish that Rowan was unsecured or within reaching distance of the vehicle during the search. Rowan's complaint alleges that he was handcuffed *before* the police searched his car. [1] ¶¶ 20–24. The BWC footage confirms that allegation. *See* [22] (Kozlowski BWC at 21:26:45–52) (officers cuff Rowan) *and* (Kozlowski BWC at 21:27:56) (Kozlowski begins search of the car).

9

The officers also argue that their search was lawful under *Michigan v. Long*, because they had a reasonable belief "based on specific and articulable facts, which taken together with the rational inference from those facts reasonably warrant[ed] [them] in believing that [Rowan ] was dangerous and [Rowan] may gain immediate control of weapons." *Id.*, 463 U.S. 1032, 1049–50 (1983); *see also United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004) ("An officer with a reasonable suspicion that a motorist may be armed and may be able to gain immediate control of weapons may conduct a protective search of the passenger compartment of the vehicle without a warrant.").

This argument relies on the assumption that the officers saw Rowan moving furtively about in his car with a "black object" or "handgun" in his hand as they approached his car. I do not read the complaint to allege that nor does the BWC footage establish that the officers saw Rowan moving about in the car with a black object or handgun. It is premature to decide whether the officers had a reasonable suspicion that Rowan had a gun or that he could gain immediate control of a gun when they searched the vehicle. *Arnold* and the other cases the officers cite for the proposition that a driver's "furtive movements" can be the basis for a reasonable suspicion that the driver is armed are all considering a factual record, usually established at a suppression hearing. *Id.*, 388 F.3d at 238–41; *United States v. Vaccaro*, 915 F.3d 431, 434 (7th Cir. 2019) ("Our summary of the facts is taken from an evidentiary hearing on Vaccaro's motion to suppress."); *United States v. Evans*,

994 F.2d 317, 319–21 (7th Cir. 1993); *United States v. Fryer*, 974 F.2d 813. 814–19 (7th Cir. 1992).

Rowan's complaint, taken as true, does not establish that the officers had probable cause to stop his car, arrest him, or search his car. The BWC footage does not establish that the officers had probable cause, or even arguable probable cause, to take those actions. Rowan has stated a claim for an unconstitutional search and seizure, and the defendant officers' motion is denied as to Count I.

### 4. *Officers Cross and Carroll's Liability*

Rowan's complaint is addressed to "defendant officers" and does not distinguish which officers first stopped him, which ones seized him, and which ones searched his car.[8] Under the federal notice pleading standard, "each defendant is entitled to know what he or she did that is asserted to be wrongful." *Griffin v. Bd. of Regents of Univ. of Wisconsin Sys.*, 818 Fed. App'x 558, 561 (7th Cir. 2020) (quoting *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)). There may be times in which all of the defendants share equal responsibility for the alleged wrongs, but review of the body-worn camera video shows that Officers Kozlowski and Capouch were the first to stop Rowan and seize him and that Officers Cross and Carroll arrived later. [22] (Cross BWC at 21:30:11) (video footage showing Cross and Carroll stopping beside blue lights, approximately five minutes after Kozlowski and Capouch first

---

[8] "Failure to intervene" is not a separate claim under Section 1983, instead it is a theory of why defendants who did not take the complained-of action can be liable for their colleagues' unconstitutional actions. *See Yang v Hardin*, 37 F.3d 282, 284–85 (7th Cir. 1994) (discussing when failure to act violates Constitutional or civil rights). I construe "Count II – Failure to Intervene" of Rowan's complaint to be allegations that all four officers should be held liable for the unlawful search and seizure.

11

stopped Rowan and four minutes after Kozlowski and Capouch cuffed Rowan and Kozlowski began searching the car); (Carroll BWC at 21:30:10) (same). The videos provide a basis for naming Kozlowski and Capouch for the seizure and search, but Rowan's complaint needs to articulate what actions Officers Cross and Carroll took that violated his Fourth Amendment rights; plaintiff can't amend his complaint in his response brief. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Officers Cross and Caroll are dismissed, without prejudice.

## B. Section 1983 and State Law Malicious Prosecution

### 1. Merits of the Malicious Prosecution Claims

A Fourth Amendment claim for malicious prosecution requires (1) a suit or proceeding instituted without probable cause, (2) a malicious motive in instituting the suit, often defined as a case brought without probable cause and for a purpose other than bringing the accused to justice, and (3) a favorable termination of the prosecution. *Thompson v. Clark*, 596 U.S. 36, 44 (2022); *see also Chiaverini v. City of Napoleon,* 602 U.S. —, 144 S.Ct. 1745, 1750 (2024); *Evans v. Matson*, No. 23-2954, 2024 WL 2206638, at *2 (7th Cir. 2024).

Under Illinois law, a malicious prosecution claim requires the plaintiff to show: "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendants, (2) the termination of the proceeding in favor of the plaintiff, (3) the absence of probable cause for such proceeding, (4) the presence of malice, and (5) damages resulting to plaintiff." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 26 (quoting *Swick v. Liautaud*, 169 Ill.2d 504, 512 (Ill. 1996)).

12

To hold the arresting officers liable under either federal or state law, the plaintiff must show that the police officers took some additional action after the arrest to cause the criminal proceeding. *See Evans*, 2024 WL 2206638, at *3; *Beaman*, 2019 IL 122654, ¶ 33 ("In other words, the relevant inquiry is whether the officer proximately caused the commencement or continuance of the criminal proceeding."); *see also*, *Washington v. City of Chicago*, 98 F.4th 860, 870–71 (7th Cir. 2024) (discussing the pleading standard to show that defendant officers' actions overcome the presumption of validity created by judicial determination of probable cause).

Rowan's complaint alleges that the officers accused Rowan of criminal activity knowing the accusations to be without genuine probable cause, and "they submitted reports and statements to prosecutors with the intent of instituting and continuing judicial proceedings against Plaintiff" and that "Defendant Officers …. deliberately fil[ed] false police reports." [1] ¶¶ 47, 49.[9] These conclusory statements are insufficient to suggest what any one of the defendants did *after* the arrest and during the criminal prosecution to proximately cause Rowan's prosecution. In his response brief, Rowan clarifies that he is alleging that the defendant officers' claims that they saw Rowan with a gun in the car are false, *see* [1] ¶ 14, and that some (or all) of the officers made those false claims in police reports and testimony during the judicial proceedings. *See* [29] at 11. But there are no allegations in the complaint about false reports or testimony. Additionally, Rowan should be conscious of what he is alleging

---

[9] I accept Rowan's argument that he incorporated all previous allegations into each count, so I consider paragraphs 47 and 49 when analyzing his Illinois malicious prosecution claim.

13

each officer did after the arrest so as to provide proper notice to the individual officers. Counts III and VII for malicious prosecution under federal and state law are dismissed with leave to re-plead.

### 2. *City of Chicago's Liability*

There can be no federal § 1983 claim against the City of Chicago for malicious prosecution except under a *Monell* theory of liability, i.e., that the City of Chicago had a policy of pursuing prosecutions without probable cause. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 694 (1978) (no municipal liability under *respondeat superior* theory, must plead that government policy or custom inflicted the injury). It is not entirely clear whether Rowan sought to proceed with a federal malicious prosecution claim against the City, but to the extent he intends to do so, he has not pled that the City has a policy of pursuing prosecutions without probable cause. Any federal claim against the City for malicious prosecution is dismissed without prejudice.

### C. **Section 1983 Claim for Monell Liability**

Local governments may be sued under Section 1983 when the plaintiff can show that the constitutional or statutory injury is caused by a government policy or custom. *Monell*, 436 U.S. at 694. To hold the local government liable under Section 1983, the plaintiff must show that he "(1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority; which (3) was the proximate cause of his injury." *Scott v. Dart*, 99 F.4th 1076, 1088–89 (7th Cir. 2024). Rowan alleges that the City of Chicago's police department has a policy or widespread

14

practice of arresting individuals without probable cause and a custom of arresting individuals based upon false or manufactured probable cause. [1] ¶ 58.

"A policy or custom need not have received formal approval through official decision making channels. A practice that is widespread and well settled may also result in liability. [There are no] bright-line rules defining 'widespread custom or practice,' but there must be some evidence there is a policy at issue rather than a random event or even a short series of random events." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (cleaned up). When the existence of the policy is derived from a series of bad acts and an inference that the policymaking level of government was bound to have noticed what was going on, "proof of a single act of misconduct will not suffice." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995).

Rowan's complaint fails to allege any other incidents illustrating the policy of which he complains—arresting an individual without probable cause. Instead, he makes the conclusory allegation that "[i]t was common for suspects to be arrested by agents of the Chicago Police Department based upon false and/or manufactured probable cause." [1] ¶ 58. This is a conclusory statement devoid of factual support. So are Rowan's other allegations about the CPD's policies and practices for arrests. *See* [1] ¶¶ 59, 61–64.[10] Rowan's complaint relies only upon the allegations of what

---

[10] In at least one case cited by plaintiff to support the contention that he can proceed with conclusory allegations and no other alleged instances of the policy, *Armour v. Country Club Hills*, the court rejected that theory and found the plaintiff had failed to specifically allege what policies and customs violated the Constitution. *Id.*, No. 11-cv-5029, 2014 WL 63850, at **6–7 (N.D. Ill. Jan. 8, 2014). Conclusory language can survive a motion to dismiss when there are "facts alleging wrongdoing by the City" so as to put the City on notice of the claim against it. *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Rowan's

15

happened to him, and that is insufficient to show municipal action. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 240 (7th Cir. 2021) ("Consistent with the Supreme Court's guidance, we have repeatedly rejected *Monell* claims that rest on the plaintiff's individualized experience with evidence of other constitutional violations."). Neither does Rowan's complaint refer to a form or document which illustrates the alleged municipal policy or custom. *Cf. White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). Rowan must make more factual allegations about other instances of individuals arrested without probable cause or the CPD's formal policies and procedures about arrests in order to meet the first element of municipal liability under *Monell*. Count IV of plaintiff's complaint is dismissed with leave to re-plead.

Because Rowan's claim that CPD officers unconstitutionally seized and searched his vehicle remains, the indemnification claim against the City of Chicago, Count VIII, is not dismissed.

## IV. Conclusion

Defendants' motions to dismiss, [18] and [24], are granted in part, denied in part. Counts V and VI for IIED and false imprisonment are dismissed with prejudice.[11] Counts III, IV, and VII, for federal malicious prosecution, *Monell* liability against City of Chicago, and Illinois malicious prosecution, respectively, are

---

allegations do not put the City on notice of what specific policies or customs caused Rowan's injury; the allegation that the City has a policy of arresting people without probable cause is simply too broad.

[11] Plaintiff conceded that his claims for intentional infliction of emotional distress and false imprisonment are time-barred. [29] at 4.

dismissed with leave to re-plead. Count I for unconstitutional search and seizure and Count VII for indemnification by the City of Chicago remain.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: July 11, 2024